# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM BRADLEY PRITCHETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 6:11-CV-03338-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff William Pritchett challenges the Social Security Commissioner's denial of his application for disability insurance benefits and supplemental security income under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et. seq.*, and XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et. seq*.

Pritchett argues that the Administrative Law Judge ("ALJ") erred by (a) finding that Pritchett did not have an impairment that meets or medically equals one of the listed impairments; (b) assigning a residual functional capacity that did not properly account for Pritchett's pain and mental disorders; and (c) concluding that Pritchett could perform his past relevant work as a waiter. Because the Court finds persuasive some of these arguments, the Court reverses the ALJ's decision and remands for further consideration.

   I.   **Background**

The complete facts and arguments are presented in the parties' briefs and will be

1

duplicated here only to the extent necessary.[1] In April 2009, Pritchett applied for disability benefits, alleging he became disabled in January 2008, based on his low back impairment, a "bad right ankle," headaches, and anger problems (Tr. 104, 111, 142). Pritchett continued to work part-time as a restaurant cook through at least September 2008, when he quit because his car broke down (Tr. 135-36).

Prior to Pritchett's January 2008 alleged onset date, he sought treatment for chronic back pain primarily by visiting the emergency rooms at St. John's Hospital and Cox Medical Center (Tr. 249-341, 347-414, 426-39). During these visits, Pritchett reported that he had significant back pain, but objective examinations performed by the emergency room physicians showed only mild abnormalities (Tr. 249-50, 255-56, 263, 268-69, 276-77, 282-83, 296-97, 305, 311-12, 319-20, 324-25, 330-31, 336-37, 347, 353-54, 357, 363-64, 367, 373-74, 377, 383-84, 387, 393-94, 397, 407, 413-14, 426, 430-31, 434, 438-39). Further, a March 2007 magnetic resonance imaging (MRI) of Pritchett's lumbar spine revealed mild stenosis based on a disc protrusion at L4-L5 (Tr. 341), and a November 2007 lumbar spine x-ray revealed mild facet hypertrophy at L4-L5 and L5-S1 (Tr. 260).

During 2007, Pritchett declined to receive facet injections (Tr. 341-42), and thus his examining physicians recommended conservative treatment with prescription pain medication, muscle relaxers, alternating ice and heat, regular exercise, and no heavy lifting or bending (Tr. 255, 258-59, 270, 274, 281, 284, 298, 302, 313, 326, 338, 341-42, 355, 365,

---

[1] Portions of the parties' briefs are adopted without quotation designated.

375, 385, 395, 432). Pritchett was treated for depression and back pain in June 2006 (Tr. 538-39). Pritchett had a depressed affect when treated for chronic back pain in January and May 2008 (Tr. 208-14; 230-32).

In May 2008, Pritchett returned to the St. John's Hospital emergency room with complaints of back pain (Tr. 208, 210). On examination, Pritchett reported back pain with range of motion but no other abnormalities were noted (Tr. 208, 211). The emergency room physician assessed myofascial strain, low back pain, and degenerative disc disease, prescribed pain medication, and discharged Pritchett in stable condition (Tr. 211-12).

The following month, in June 2008, Pritchett presented to St. John's Clinic physician Ronald Glas, M.D., with complaints of back pain (Tr. 466). On examination, Pritchett's low back was tender with radiation into his right buttock (Tr. 466). Dr. Glas prescribed Percocet (Tr. 466).

In July 2008, Pritchett told Dr. Glas that his "back pain [wa]s generally well controlled with the Percocet" (Tr. 465). Dr. Glas continued Pritchett on Percocet (Tr. 465). In August 2008, Pritchett returned to Dr. Glas for a follow-up evaluation (Tr. 464). Pritchett told Dr. Glas he had "continued good control of his back pain" with Percocet (Tr. 464). Dr. Glas also noted that Pritchett had a "[f]airly normal mood and affect" (Tr. 464). Dr. Glas assessed "chronic back pain, controlled," and continued Pritchett on Percocet (Tr. 464). Two months later, in October 2008, Pritchett told Dr. Glas that he was having problems with back pain and poor sleep despite his use of Percocet (Tr. 444). On examination, Dr. Glas noted

3

Pritchett had tenderness in his low back (Tr. 444). He assessed back pain and possible restless legs syndrome, continued Pritchett with Percocet, and started him on Mirapex (Tr. 444).

In December 2008, Pritchett returned to Dr. Glas for follow-up on his back pain (Tr. 448). On examination, Pritchett had a marked increase in tenderness in his lower lumbar spine (Tr. 448). Dr. Glas prescribed Percocet and a trial of Requip (Tr. 448). Later that month, Pritchett presented to the St. John's Urgent Care Center with complaints of low back pain with bending and lifting (Tr. 343). On examination, Pritchett appeared to be in mild-to-moderate pain (Tr. 343). Although Pritchett had a painful, reduced range of motion on examination, no other abnormalities were noted (Tr. 343). The treating physician recommended treatment with heat, muscle relaxants, NSAIDs, exercise, and no heavy lifting (Tr. 343). Three days later, Pritchett told Dr. Glas that the medication he received from urgent care did not relieve his pain (Tr. 452). On examination, Pritchett appeared to be in mild-to-moderate pain (Tr. 452). Although Pritchett had normal motor strength and sensation; he had a reduced, painful range of motion in his back (Tr. 452). Dr. Glas assessed lumbar strain and prescribed Percocet (Tr. 452). In January 2009, Pritchett returned to Dr. Glas to refill his Percocet prescription (Tr. 456). He said his back pain was "about the same," and had trouble sitting for long periods (Tr. 456).

In April 2009, Pritchett saw Dr. Glas (Tr. 460). He said he was currently out of work and was not getting any regular exercise (Tr. 460). Dr. Glas continued Pritchett with his pain

4

medication and strongly encouraged him to start walking 20 to 60 minutes daily (Tr. 460). In June 2009, Pritchett told Dr. Glas that he was walking 45 minutes three or four days weekly (Tr. 500). On examination, Pritchett's mood and affect were "fairly normal" (Tr. 500). He had mild tenderness in his lumbar spine, but his straight-leg raises were negative (Tr. 500). Dr. Glas continued Pritchett on a reduced dosage of Percocet (Tr. 500). Two months later, in August 2009, Pritchett returned to Dr. Glas with complaints of low back pain (Tr. 503, 507). Pritchett also said that he had a family history of bipolar disorder and attention deficit disorder, that he has a learning disability and did not graduate from high school, and that he could not lift more than 30 pounds (Tr. 503, 507). On examination, Pritchett had tenderness in his lumbar spine but his straight-leg raises were negative (Tr. 503, 507). Dr. Glas assessed chronic low back pain and "learning disability, question mood disorder" (Tr. 503).

In September 2009, Pritchett underwent an MRI of his lumbar spine (Tr. 511). The MRI remained unchanged, showing a "small bulging disc" (Tr. 511). Pritchett declined a referral to the pain clinic, stating that "they told him that they couldn't help him" (Tr. 511).

In November 2009, Pritchett presented to Mark Bradford, Pys.D., for a parental competency psychological assessment after family services took custody of his son (Tr. 548-60). Pritchett said he was taking Percocet for his chronic back pain, but no other medications (Tr. 551). He said he had never been hospitalized for a mental illness or attended counseling, and he denied having any psychotic behaviors (Tr. 553). He said he

5

could not keep a job because "the way my back is" (Tr. 553). Although Pritchett said that he had a learning disability, he indicated his depression was not "too serious" (Tr. 558). Based on results of a Kaufman Brief Intelligence Test, Dr. Bradford assessed Pritchett with a K-BIT Composite IQ of 70, placing him at the lower end of the range for borderline intellectual functioning (Tr. 554-55). Dr. Bradford also assessed depressive disorder, and he assigned Pritchett with a current global assessment of functioning (GAF) score of 60 (Tr. 555). Overall, Dr. Bradford believed Pritchett's impairments could be long-term and disabling, and that it was unlikely Pritchett could safely care for his son (Tr. 560).

Four months later, in March 2010, Pritchett returned to Dr. Glas for a follow-up (Tr. 563). Pritchett told Dr. Glas that his "back pain [had] been well-controlled with [the] current dosage of Percocet" (Tr. 563). On examination, Pritchett had no tenderness in his low back and straight-leg raises were negative (Tr. 563). The following month, in April 2010, Pritchett told Dr. Glas that his back pain had resolved but his stress level was very high because he could not find a job and his girlfriend moved to Springfield (Tr. 567).

Later that year, in August 2010, Pritchett, his attorney, and a vocational expert appeared for an administrative hearing (Tr. 23-50). The ALJ, in her decision, found severe the following impairments: "degenerative disc disease with bulging discs, arthritis in right ankle and hips and hearing impairment." (Tr. 15). The ALJ found that Pritchett "has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally stoop, crouch and climb

6

ladders." (Tr. 17). The ALJ asked the vocational expert to consider a hypothetical claimant of Pritchett's age, education, and work experience, who was limited to light work with occasional stooping, crouching, and climbing (Tr. 45-46). The ALJ also said that the claimant should avoid concentrated exposure to extreme cold, vibrations, hazards, machinery, and heights (Tr. 46). Finally, the ALJ explained that the claimant's personality disorder and depression would not cause significant limitations on his ability to work (Tr. 46). The vocational expert responded that such a claimant could perform Pritchett's past work as a light, semi-skilled waiter (Tr. 46). The vocational expert further testified that such a claimant could perform work existing in significant numbers in the economy as a food assembler (40,000 light, semi-skilled jobs nationally), and sewing machine operator (121,000 light, unskilled jobs nationally) (Tr. 47). The ALJ found Pritchett not disabled.

## II. Analysis

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007).

### A. Whether the ALJ erred in finding Pritchett did not have a listing-level impairment

Pritchett argues that the ALJ erred at step three of her decision by failing to discuss specific listings under 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether Pritchett's impairments met those listings. Pritchett relies for this argument on *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). But the Commissioner points out that *Clifton* is "not the

7

rule in the Eighth Circuit." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). Rather, in the Eighth Circuit, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). Thus, Pritchett is incorrect in saying that the ALJ erred by failing to specifically discuss the listings.

The only listing that Pritchett specifically argues is supported by this record is Personality Disorder under Listing 12.08. In order to meet this listing, Pritchett would have to prove that his personality disorder resulted in at least two of the following: "(1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.08(B).

The only support Pritchett offers for his argument that he meets the listing for personality disorder is a series of statements that licensed clinical psychologist Dr. Bradford made in his report for the Department of Family Services. Dr. Bradford stated that Pritchett had borderline personality disorder, that his "diagnosis would be guarded to poor" for a quick return of custody of his son, and that it was "entirely possible, that his problems are long term and disabling and he may have difficulty making adequate improvements and changes in the time typically allotted by the courts." (Tr. 560).

The Commissioner argues that Dr. Bradford's conclusions do not support a finding

8

that Pritchett had any marked difficulties. The Commissioner points out that Dr. Bradford assigned Pritchett a GAF score of 60, which indicates only moderate difficulty in social or occupational functioning. The Commissioner also points out that Pritchett worked part-time as a cook for at least eight months after his alleged onset date, only quitting because his car broke down, and that this suggests he did not have marked limitations. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity.") The Court agrees with the Commissioner that for these reasons, substantial evidence exists on the record for the ALJ's conclusion that Pritchett's personality disorder did not lead to at least two marked limitations and therefore did not meet a listing.

### B. Whether the residual functional capacity assessed by the ALJ failed to properly account for Pritchett's pain and mental disorders

In her decision, the ALJ found severe Pritchett's degenerative disc disease with bulging dics, and the residual functional capacity assessed by the ALJ limited Pritchett to light work, with the ability to only occasionally stoop, crouch, and climb ladders. Pritchett argues that the residual functional capacity assessed by the ALJ "does not reflect [Pritchett's] bouts with pain, which is supported by evidence..." [Doc. # 13 at 16]. Pritchett's argument rests on this conclusory statement, and does not point to a single record indicating that Pritchett suffered from greater pain than is reflected in his residual functional capacity.

The Commissioner admits that Pritchett has degenerative disc disease, but argues that the ALJ adequately accounted for this impairment in her decision. The Commissioner first

9

points out that the ALJ noted in her decision that although Pritchett frequently visited the emergency room for back pain, x-rays taken at those visits "did not reveal significant pathology", and that Pritchett was treated at those visits with pain killers and discharged. [Doc. # 6-3 at 18]. The Commissioner points to records of only mild stenosis and mild facet hypertrophy. (Tr. 260, 341). The Commissioner also points out that physicians have treated Pritchett conservatively for back pain, recommending treatment such as medication, muscle relaxers, alternating ice and heat, and regular exercise; failing to ever recommend surgery; and failing to impose any workplace restrictions beyond restricting heavy lifting. *See Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993) ("[T]hat the doctors had prescribed only muscle relaxers and pain relievers when [claimant] had sought treatment" and the "lack of any significant restrictions on [claimant's] daily activities by his doctors", taken together with other factors, were "inconsistent with [claimant's] subjective complaints of disabling pain."). The Commissioner also points out that treating physician Dr. Glas's treatment records indicate that Pritchett's back pain had resolved and is well controlled with Percocet. (Tr. 464, 465, 563, 567). *See Brace v. Astrue*, 578 F.3d 882, 884 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). For all of these reasons, substantial evidence exists on the record for the ALJ's chosen level of incorporation of Pritchett's back pain into the residual functional capacity assessed to Pritchett.

The ALJ also found not severe Pritchett's alleged impairments of personality disorder

and depression, and did not incorporate limitations from these impairments into Pritchett's residual functional capacity or into the hypothetical to the vocational expert. Pritchett appears to argue that substantial evidence does not exist for this finding. An impairment is not "severe" if it does not have a significant impact on an individual's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Id*. (internal citations omitted).

Pritchett claims that "[s]chool records and medical records supported that [Pritchett] suffered from some type of mental disorder." [Doc. # 13 at 14-15]. The only evidence on the record that Pritchett specifically references for this point is the evaluation of Dr. Bradford, who concluded that Pritchett suffered from long-term antisocial personality mindset, personality disorder, and possible mood disorder, and that these disorders rendered Pritchett incapable of caring for his son. The Commissioner points out that no treating physician has suggested any workplace limitations due to these alleged disorders. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). The Commissioner also points out that Pritchett has not consistently sought treatment for these alleged disorders and that there is no record of any treatment for these disorders other than sample medications from Dr. Glas. Further, Dr. Bradford was not assessing the effects of Pritchett's mental impairments on his ability to work, but rather was assessing the effects of his mental impairments on his ability to raise children. Even so, Dr. Bradford's conclusion that the state should continue

to deny Pritchett custody of his child based on mental impairments shows that those impairments would have more than an insignificant effect on Pritchett's ability to work. Thus, there was not substantial evidence on the record for the ALJ's conclusion that Pritchett's mental impairments were not severe, and the ALJ's conclusion was error. For this reason, remand is necessary. *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (rejecting outright an argument of harmless error where the ALJ erroneously found not severe the claimant's borderline intellectual functioning).

Pritchett also argues that the ALJ erred in finding not severe his learning disorder. Pritchett points to Dr. Bradford's conclusion that Pritchett had an IQ in the low 70s and severe learning problems. But the Commissioner points out that the ALJ found Pritchett not disabled because Pritchett was capable of performing his previous job as a waiter. Because there is no evidence that Pritchett's learning problems impeded his ability to work as a waiter, and no evidence that his learning problems had worsened since he worked as a waiter, the ALJ did not err in finding that Pritchett's learning problems did not restrict his ability to work as a waiter. *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005).

Finally, Pritchett argues that the ALJ failed to consider the combined effects of Pritchett's impairments, claiming that Dr. Bradford found that Pritchett had a "synergy" of problems that may prove disabling. The Court agrees that the ALJ failed to evaluate this conclusion, and instructs the ALJ on remand to consider the combined effects of Pritchett's impairments in light of Dr. Bradford's conclusion.

12

**C.     Whether the ALJ erred in finding Pritchett could perform past relevant work as a waiter**

Pritchett argues that the hypothetical posed by the ALJ to the vocational expert improperly omitted the same impairments that Pritchett argues were improperly omitted from his residual functional capacity. "[T]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). The ALJ's hypothetical stated that Pritchett's mental impairments would not have a significant effect on his ability to work. For reasons discussed above, this statement was error. Thus, the ALJ's hypothetical did not capture the concrete consequences of Pritchett's impairments and the vocational expert's testimony was not substantial evidence to support the ALJ's conclusion that Pritchett could perform past relevant work as a waiter. On remand, the ALJ is instructed to include in any hypothetical questions to vocational experts the concrete consequences of Pritchett's severe mental impairments, as well as any concrete consequences the ALJ finds after properly considering the combined effect of Pritchett's impairments.

**III.     Conclusion**

Accordingly, it is hereby ORDERED that William Pritchett's Petition [Doc. # 3] is GRANTED. The decision of the ALJ is REVERSED and remanded for further consideration consistent with this Opinion.

13

Case 6:11-cv-03338-NKL   Document 16   Filed 06/01/12   Page 13 of 14

                                                s/ Nanette K. Laughrey  
                                               NANETTE K. LAUGHREY  
                                               United States District Judge  

Dated: June 1, 2012  
Jefferson City, Missouri